**UNITED STATES of America ex rel. Clifford HUNDLEY, Appellant,**

v.

**Mr. Warren PINTO, Superintendent of the New Jersey State Prison Farm, Rahway, New Jersey.**

**No. 17595.**

United States Court of Appeals Third Circuit.

Submitted on Briefs May 5, 1969.

Decided July 30, 1969.

Clifford Hundley, pro se.

Robert N. McAllister, Jr., Atlantic County Prosecutor, Atlantic City, N. J. (Ernest M. Curtis, Asst. Prosecutor, on the brief), for appellee.

Before McLAUGHLIN, KALODNER and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

McLAUGHLIN, Circuit Judge.

Appellant and four others were indicted for armed robbery of the patrons and bar maid of a tavern in Atlantic County, New Jersey, December 4, 1964. On May 18, 1965, when the cases were to be tried, defendants, Cooper, Ferguson and Perry, Jr., retracted not guilty pleas and pleaded guilty. The trial proceeded as to appellant and Calvin Clidy, both of whom were found guilty on all six counts of the indictment. The New Jersey Superior Court and Supreme Court affirmed the convictions without opinion. In 1968, appellant applied to the United States District Court, District of New Jersey, for a writ of habeas corpus which was denied. 282 F.Supp. 660. This appeal followed.

Appellant's appeal to this court was originally founded upon the following contentions. 1. That at the time of his arrest and interrogation he was denied his right and request to have an attorney assigned to assist him. 2. That he was deprived of his constitutional rights to the assignment of counsel at the magistrate's hearing. 3. That under Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) he was entitled to assignment of counsel at the time of his arrest and interrogation. The district court held that these were the only grounds which were passed upon by the state court. It further found that appellant's allegations "that there was lack of probable cause for his arrest and that the trial court erred by admitting certain evidence, have not been passed on by the Courts of New Jersey and are dismissed, pursuant to 28 U.S.C. 2254, without prejudice, to allow petitioner opportunity to exhaust his State remedies." The opinion of the district court denying the application for habeas corpus was filed March 19, 1968. There have been no further proceedings in the state court by appellant to date. Appellant's own statement in his petition for habeas corpus regarding the above mentioned allegation (which had not been passed upon by the state court) concerning the admission of certain evidence by the state trial court is that it concerns the admission of the oral statement "supposedly given by the petitioner."

We agree with the district court that in New Jersey, arraignment is not part of the trial. N. J. Rules of Practice, Rule 8:4–2. It affords an opportunity to the accused to plead as a condition precedent to trial. In this instance appellant pleaded not guilty. He did not waive any defenses and was not denied due process by not having counsel at his arraignment and magistrate's hearing.

Appellant also contended that he was deprived of a constitutional right by not having counsel assigned to him at the time of his arrest and questioning. He was arrested in this matter December 5, 1964 and questioned on that day and the next. His trial took place in May 1965 and he was sentenced June 22, 1965. Under the Escobedo opinion of June 22, 1964, the state was not required to furnish counsel to a defendant. The Miranda decision, 384 U.S. 436, 86 S.Ct. 1602, 16 L.E.2d 694, inter alia, calling for appointment of counsel for indigent defendants in criminal cases, was not filed until June 13, 1966.

This brings us to the following situation. On May 5, 1969, the day this appeal was submitted for decision, a letter was received from appellant by the clerk of this court asking that the court "consider the point of applicability of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) regarding the admission at trial of the written statement of a co-defendant, Calvin Clidy, wherein numerous references were made to this defendant, and further that this defendant did not have the right to confront and cross-examine said co-defendant." We are satisfied that the request should be granted.

The entire circumstances as to the statement of the co-defendant Clidy are depicted at length in the trial transcript.

Clidy's statement was marked for identification. Appellant's attorney suggested that whatever Clidy said in the statement incriminating Hundley be blocked out. The prosecutor advised the judge that either excision of the Hundley references or limiting instructions were satisfactory to the State. The court addressing Hundley's attorney said:

"The Court: Mr. Goldberg, are you satisfied, if I instruct the jury that the statement, S-1, can only be considered by the Jury against the defendant Calvin Clidy and cannot be used or considered by the Jury in any way involving your client, Mr. Hundley?"

The attorney answered:

"Mr. Goldberg: Your Honor, I am perfectly satisfied. I know that you will instruct the Jury properly as you always do. I feel that this is the answer to my motion. I am satisfied.

"The Court: All right, thank you."

The attorney for appellant as a matter of trial judgment did not cross-examine Clidy either before or after Clidy's statement was read to the jury. It is evident from the transcript that there would not have been any opposition whatsoever to Hundley's attorney even recalling Clidy to the stand for cross-examination concerning that part of Clidy's statement implicating Hundley. Such inference strongly appears from further sidebar dialogue between the judge and Irwin Goldberg, Esq., counsel for Hundley, as follows:

"The Court: Mr. Goldberg, you represent the defendant Hundley. I have taken the testimony of the officers down to the point of the oral statement which was made by him, and before I go into the question of voluntariness from the standpoint of the Court's findings, I ask you, are you offering any proof by any witness or the defendant challenging the statements made by the officers?

"Mr. Goldberg: May it please the Court: At this time I do not intend to offer any witnesses to challenge the voluntariness of the alleged oral statements made. I intend to abide by the evidence produced by the Prosecutor and by the cross examination so far heard here at this time."

As is seen, the trial situation before us differed completely from that in Bruton. In the latter, a postal inspector testified that defendant Evans had orally confessed extrajudicially to him that he and co-defendant Bruton had committed the armed robbery. The Supreme Court held, p. 126, 88 S.Ct. p. 1622, that the "admission of Evans' confession in this joint trial *violated petitioner's right of cross examination* secured by the Confrontation Clause of the Sixth Amendment." (Emphasis supplied). And at p. 137, 88 S.Ct. p. 1628 the Court said "* * * we cannot accept limiting instructions as an adequate substitute for petitioner's constitutional *right of cross examination.*" (Emphasis supplied). The instant matter was tried in May 1965. The Bruton trial took place in June 1966. It is gratifying to note that though the Brüton rule was not in being until more than three years after this appeal had been originally tried, the trial court and attorneys for the parties functioned substantially in this trial as Bruton, much later, demanded. The heart of Bruton is that if at a joint trial a co-defendant's confession which involves another co-defendant, is to be allowed into evidence the latter co-defendant must be allowed his constitutional right of cross-examination secured by the Sixth Amendment Confrontation Clause if he so desires. In our trial, co-defendant Clidy had given a written statement. He was a trial witness and testified for thirty-four pages of the transcript. In the course of that testimony, Clidy admitted that his statement was voluntary. The judge found Clidy's statement to be voluntary. The statement was read to the jury. The most important part of the statement from appellant's viewpoint was that it said that Perry drove the car with the four other defendants therein to the Mickey Mouse Tavern. Arriving there Jean Cooper and Adelaide Ferguson, the girl

defendants, left the car and went into the tavern. On their return Jean Cooper spoke to Perry saying there were some people in the tavern. Then, according to the statement, Perry reached in the back of the car and brought out a shotgun and Perry and Hundley went into the bar with Perry carrying the shotgun. The statement has some further details about Perry's later handling of the shotgun. Asked about what guns were used and who had them, Clidy said in the statement "The only gun I know about is the single barrel shotgun that Braxton (Perry) used."

According to the uncontradicted testimony of Detective Umholtz, he had advised Hundley of his right to counsel, that Hundley knew he was entitled to have an attorney and "That's why he wouldn't give me a written statement without an attorney." However, stated the witness, Hundley volunteered his oral statement because "* * * he wanted to make it plain that he wasn't the one carrying the gun." Hundley undoubtedly considered the establishment of that fact to be of vital importance to him. Joining with Perry in the holdup made him a part of the *armed* robbery group but it is at least questionable that Hundley knew that. Assuming he did, he also knew that such knowledge on the part of the court and jury would probably help him sentence-wise with respect to the armed robbery charges. In the trial situation facing him, where the Clidy statement definitely pointed to Perry as the crime leader armed with the sole crime weapon, the decision on the part of Hundley and his attorney was sound. Though it was informal and quietly achieved simply by not cross-examining Clidy, that also was a wise trial tactic. Clidy had not drawn Hundley into the crime by his statement any more than Hundley himself had admitted orally. Clidy's evidence eliminating Hundley from any connection with the shotgun could not be improved upon. Therefore, abstention from cross-examination was an excellent lawyerlike move. Hundley has never claimed that it was

not the best possible trial judgment under the whole circumstances. Clidy was on the witness stand and present at the trial both before and after his appearance as a witness. He was clearly available for cross-examination. Such examination obviously could not help Hundley more than Clidy had in his own statement and could have resulted in further serious entanglement of Hundley with the crime charged. The choice here of not cross-examining was commendable.

The judgment of the District Court will be affirmed.