John D. WADE, Appellant,

v.

Howard YEAGER, Warden, New Jersey
State Prison, and State of
New Jersey.

No. 17494.

United States Court of Appeals
Third Circuit.

Argued June 13, 1969.

Decided Aug. 29, 1969.

Certiorari Denied Dec. 8, 1969.

See 90 S.Ct. 466.

Alan J. Gutterman, Cummis, Kent &
Radin, Newark, N. J., for appellant.

Robert H. Altshuler, Asst. Prosecutor,
Paterson, N. J., for appellee (John G.
Thevos, Passaic County Prosecutor,
Paterson, N. J., on the brief).

Before STALEY, FREEDMAN and
ALDISERT, Circuit Judges.

OPINION OF THE COURT ON
REMAND FROM THE SUPREME
COURT OF THE UNITED STAT-
ES

FREEDMAN, Circuit Judge.

This appeal is before us on remand
from the Supreme Court.

Appellant, John D. Wade, his brother,
Nathaniel Wade, and one James Knox,
were indicted jointly for a murder com-
mitted during the course of a robbery in
Paterson, New Jersey. The State was
granted a severance as to Knox, and the
Wade brothers were jointly tried before
a jury which found them guilty of mur-
der in the first degree and recommended
life imprisonment. They were sentenced

accordingly. Knox was tried later and acquitted.

Nathaniel Wade was unsuccessful in a direct appeal from his conviction to the Supreme Court of New Jersey (State v. Wade, 40 N.J. 27, 190 A.2d 657 (1963)), and in a subsequent federal collateral attack. Wade v. Yeager, 245 F. Supp. 67 (D.N.J.1965), modified 377 F. 2d 841 (3 Cir. 1967).

John Wade did not appeal from his conviction, but later sought relief under the New Jersey post-conviction law (N.J.R.R. 3:10A–1 et seq.), which was denied on May 24, 1965 by the Supreme Court of New Jersey. (No. M–230 Sept. Term 1964.) He then sought federal habeas corpus, which he pressed without success all the way to the Supreme Court of the United States.[1] Then on February 7, 1967, he filed the present petition for a writ of habeas corpus. The District Court denied his petition and refused a certificate of probable cause for appeal. This Court, on September 29, 1967, also denied him a certificate of probable cause. The Supreme Court, however, in a per curiam opinion on June 17, 1968, granted certiorari, vacated the judgment and remanded the case to us "for further consideration in light of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 [1968]."[2] See Wade v. Yeager, 392 U.S. 661, 88 S.Ct. 2291, 20 L.Ed.2d 1352 (1968).

On the return of the mandate to us, we granted a certificate of probable cause, appointed counsel for appellant and heard argument on the appeal.

### I

The *Bruton* issue requires a consideration of the circumstances surrounding Nathaniel Wade's confession. On March 3, 1960, a tavern keeper was shot to death in front of his place of business. It is conceded that the gun had originally belonged to John Wade, although he claimed that he had delivered it to the victim and that it went off in a struggle which arose during a quarrel over the payment of the purchase price. In the course of their flight from the pursuing police, the Wade brothers abandoned their car at the George Washington Bridge and fled on foot. Nathaniel leaped from a wall and sustained multiple fractures of his leg. John was struck in the leg by a police bullet. They were captured and taken to a hospital in New York City for medical attention. Nathaniel remained at the hospital for 19 days, when a Paterson police detective removed him from the hospital and, accompanied by other police officers, took him to police headquarters in New York City where he was fingerprinted and photographed. On the advice of counsel he waived extradition and was then brought to police headquarters in Paterson, New Jersey. In the late afternoon of that day, a physician summoned by the police gave him an injection of Demerol and about an hour and one-half later two police officers began to interrogate him. The interrogation lasted for about two hours and then his statement was typed by a detective, read to him, and he signed it.

At the joint trial of the Wades, Nathaniel's confession was offered by the State and over his objection was admitted in evidence against him. The jury was instructed, however, under the doctrine of Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957), that the confession was not to be considered against John. Nathaniel later took the stand in his own defense and while admitting that the confession

1. His petition for habeas corpus was denied by the District Court for the District of New Jersey on December 29, 1965, and a petition for rehearing was denied on March 1, 1966. On March 30, 1966, this Court denied his petition for a certificate of probable cause for appeal and on June 20, 1966, the Supreme Court of the United States denied a petition for certiorari. Wade v. Yeager, 384 U.S. 1020, 86 S.Ct. 1986, 16 L.Ed.2d 1044 (1966).

2. In Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968), *Bruton* was held to apply retroactively both to state and federal prosecutions.

bore his signature, claimed that it was obtained when his mind was clouded by the effects of the Demerol, his physical injuries and the suffering imposed by the travels of the day, and that when he signed the paper he thought it was merely a consent to be photographed. On cross-examination of Nathaniel, the prosecution read his confession item-by-item, followed in each instance by his denial.[3] John did not cross-examine his brother.

Since Nathaniel already had denied the truthfulness as well as the voluntariness of the confession, which had made John the chief culprit, John asserts that so far as he was concerned he had in fact no opportunity for effective cross-examination of Nathaniel. There existed, he asserts, only the appearance of an opportunity for confrontation of Nathaniel because at the most John could expect no more on Nathaniel's cross-examination than a reiteration of the testimony he had given on direct examination and on cross-examination by the state that his confession implicating himself and John was not truthful or voluntary.

In *Bruton,* where *Delli Paoli* was overruled, it was held that in a joint trial the introduction against a co-defendant of his confession which also implicates the defendant deprives the defendant of his Sixth Amendment right of confrontation, where the co-defendant has not taken the witness stand, because the defendant could not cross-examine him, and a cautionary instruction to the jury to consider the confession only as against the co-defendant was held to be ineffective.[4] The evil at which *Bruton* struck was the likelihood that the co-defendant's confession might percolate into the minds of the jurors despite a cau-

tionary instruction. The Supreme Court did not intend in *Bruton* to invalidate all joint trials in which a co-defendant's confession is admitted against him. Where confrontation is available it matters not that the defendant finds it unnecessary to cross-examine his co-defendant because he has already said on direct examination or on cross-examination by the prosecution all that the defendant could possibly have expected to achieve by cross-examining him. It might, of course, be said that in every joint trial, even where there is confrontation and the co-defendant can be cross-examined by the defendant regarding the co-defendant's confession which implicates the defendant, there is nevertheless inevitable prejudice to the defendant that cannot adequately be met by cross-examination. But we cannot view *Bruton* as expressing *sub silentio* a doctrine which would declare all joint trials invalid whenever a co-defendant has given a confession which implicates the other defendant, even though both defendants, as here, took the stand and there is full opportunity to cross-examine the co-defendant who made the confession. We do not feel at liberty to extend its holding to what may appear to be the logical next step of declaring all such joint trials inevitably unconstitutional for lack of due process.[5]

John's choice not to cross-examine Nathaniel regarding the confession does not destroy the reality that Nathaniel was available for that purpose. The right of confrontation is satisfied where there is the opportunity for cross-examination and does not require that the opportunity be exercised.[6] If John's cross-examination of Nathaniel could not have been of any use to John, this is

3. See Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); West v. Henderson 409 F.2d 95 (6 Cir. 1969). *Cf.* United States v. Miles, 413 F.2d 34 (3 Cir. 1969); United States v. Block, 88 F.2d 618 (2 Cir. 1937), L. Hand, J.

4. The right to confrontation was held to be incorporated into the Fourteenth Amend-

ment in Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

5. *Cf.* West v. Henderson, 409 F.2d 95 (6 Cir. 1969).

6. United States ex rel. Hundley v. Pinto, 413 F.2d 727 (3 Cir. 1969); but see, Townsend v. Henderson, 405 F.2d 324, 329 (6 Cir. 1968).

only because Nathaniel had already given John the benefit on his direct examination and cross-examination by the state of the disavowal of his confession which John normally might have hoped to achieve by cross-examination. That it came voluntarily from Nathaniel instead of being wrung from him on cross-examination shows only that cross-examination was unnecessary and not that it was unavailable.[7]

■ We hold, therefore, that John suffered no deprivation of his constitutional right of confrontation which made the admission of Nathaniel's confession constitutionally invalid as to John.[8]

## II

■ Although the Supreme Court remanded the case to us only for further consideration in light of *Bruton*, our subsequent grant of a certificate of probable cause contains no limiting language. We therefore turn to an additional claim, pressed upon us by appellant's counsel, that John's confession should not have been admitted in evidence against him because it was unsigned.

During the course of the trial the judge preliminarily took testimony as to the circumstances surrounding John's confession. Two police detectives testified that they were present at the interrogation and that John's statement was read to him. One of the detectives testified that John admitted the truth of the statement although refusing to sign it, while the other testified only that John refused to sign the statement until he spoke with his attorney. John offered no testimony on this during the preliminary hearing and at its conclusion the

judge ruled that the statement was admissible. Later, during the trial, John, both on direct and cross-examination, emphatically denied that he made the statement and declared it untrue.

John now contends that the trial judge's preliminary decision that his statement was admissible against him was erroneous because the testimony of one detective that John admitted the truth of the statement was not supported by the other detective, the testimony of the two detectives was contradictory and the prosecution therefore did not carry its burden of proving John's acknowledgement of the confession. The testimony of the two detectives, however, is not contradictory, and in any event, whatever inconsistency existed goes to the weight and credibility of the prosecution's evidence and is not enough to condemn it as legally inadequate.

■ Appellant also argues that even if the preliminary finding that his confession was admissible was supported by the testimony of the detectives, this finding should have been withdrawn when at the trial he took the witness stand and denied under oath that he had acknowledged the confession. Obviously, however, appellant's denial did not destroy the testimony of the detectives but raised only a conflict in the evidence which required an assessment of its credibility and weight. This is a matter for the fact-finder to determine and cannot be adjudicated as a matter of law.

■ Finally, appellant claims that there was no express finding by the trial judge that he had acknowledged his unsigned confession. Since the trial judge held the preliminary hearing for the purpose of deciding whether the un-

---

7. In Douglas v. Alabama, 380 U.S. 415, 420, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), where in the course of cross-examining Loyd, an alleged accomplice, the prosecution questioned him regarding his confession paragraph by paragraph in the guise of refreshing his memory, the court held that "effective confrontation of Loyd was possible only if Loyd affirmed the statement as his." In that case, however, although he took the stand, there was

no real opportunity to cross-examine Loyd because he invoked his privilege against self-incrimination and declined to answer any questions other than his name and address.

8. See The Supreme Court, 1967 Term, 82 Harv.L.Rev. 63, 236–237 (1968) ; see also, Santoro v. United States, 402 F.2d 920, 922–923 (9 Cir. 1968).

signed confession was admissible, a decision that it was admissible necessarily included a finding that John had acknowledged it. For under New Jersey law an unsigned confession is admissible only if the defendant acknowledged it to be correct after it was read to him.[9]

We therefore reject the contentions so ably presented to us by appellant's court-appointed counsel, to whom we express the thanks of the Court.

The judgment of the District Court will be affirmed.

9. See State v. Smith, 27 N.J. 433, 142 A. 2d 890 (1958); State v. Cleveland, 6 N.J. 316, 78 A.2d 560, 23 A.L.R.2d 907 (1951).