STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
NATHANIEL WADE, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division.

Argued December 22, 1970—Decided April 13, 1971.

Before Judges Lewis, Matthews and Mintz.

*Mr. Samuel L. Biber,* assigned counsel, argued the cause for appellant.

*Mr. Archibald Kreiger,* Assistant Prosecutor, argued the cause for respondent (*Mr. Joseph D. J. Gourley,* Passaic County Prosecutor, attorney).

The opinion of the court was delivered by

Lewis, P. J. A. D. Defendant Nathaniel Wade appeals from an order of the Passaic County Court, denying his petition for post-conviction relief which was predicated upon the ground that his conviction was "illegal and unconstitutional" for the reason that he was precluded from cross-examining his co-defendant, John Wade, regarding an alleged extra-judicial confession inculpating defendant.

Defendant and his brother, John Wade, were jointly indicted, tried and convicted for the murder of Harry Eckstein. The facts pertaining to the crime as well as to the trial itself are cumulatively detailed in the cases of *Wade v. Yeager,* 415 *F.* 2d 570 (3 Cir.), *cert.* den. 396 *U. S.* 974, 90 *S. Ct.* 466, 24 *L. Ed.* 2d 443 (1969) [herein *Wade*];

*Wade v. Yeager,* 245 *F. Supp.* 62 (D. N. J. 1964), and
*State v. Wade,* 40 *N. J.* 27, *cert.* den. 375 *U. S.* 846, 84
*S. Ct.* 100, 11 *L. Ed.* 2d 73 (1963). However, reference to
some of the basic background facts will be helpful.

The State's theory of defendant's culpability, as set forth
in the proofs and as stated in the trial court's charge, was
that defendant aided and abetted his brother in the com-
mission of a robbery which claimed the life of its victim.
The State charged that on March 3, 1960 the Wade brothers
drove from Connecticut to Paterson, New Jersey to meet
James Knox, with whom they conspired to rob Harry Eck-
stein, a local taverner, who also conducted a check-cashing
business for the patrons of his father's tavern.

Shortly before noon on the day of the robbery, Eckstein,
having just returned from the bank with a bank envelope
containing $5,200 in cash, was accosted by John within a
few feet of his father's tavern. In the ensuing scuffle, Eck-
stein was shot and killed. Defendant, who was then driving
the "getaway car" around the corner, drove by the front of
the tavern when John saw him, jumped into the car, took
over the wheel and drove away. A bystander, Harrison Tyler,
saw a car pulling away from the scene and noticed the first
two digits of "21" on the blue and white license plates. On
the basis of this information, the police commenced pursuit
of the car.

In the course of their flight from New Jersey, the Wade's
car crashed into a retaining wall at the George Washington
Bridge; they abandoned the car and fled on foot. Both of the
Wades were seriously injured in their subsequent attempts
to avoid apprehension and each was hospitalized after his
capture. Most of the stolen money was found strewn along
their escape route.

On March 22, 1960 defendant signed a confession which
he repudiated at trial on the ground that it was induced by
demerol, a sedative drug administered by a doctor to ease
his pain, which so critically impaired his will and capacity
for self-determination that he was unaware of having con-

fessed to the crime. John was also alleged to have confessed to the crime, but he, too, repudiated his "confession," insisting that he never made the unsigned confession of March 9, 1960 which the State introduced into evidence as his acknowledgedly true, voluntary and complete statement.

Defendant denied participating in the robbery, and John claimed he was acting in self-defense when Eckstein was killed. They testified that they had come to Paterson for separate business dealings — defendant to purchase an interest in a tavern, and John to sell a revolver. John stated that he had agreed to sell Eckstein the gun, and when the latter refused to pay after delivery, a quarrel occurred and decedent drew the gun which accidentally discharged during a struggle. Defendant testified that he was driving around the corner near the tavern when he noticed the scuffling and pulled up, whereupon John got behind the wheel and drove away.

On March 12, 1961, two days after the completion of a 27-day trial, the jury found the Wades guilty of first degree murder with a recommendation of life imprisonment. On his appeal to our Supreme Court, defendant's conviction was affirmed.

Since the date of conviction defendant has initiated no less than 16 legal proceedings, while his brother, who did not directly appeal his conviction, has instigated 15 separate proceedings. These several actions, principally in the nature of *habeas corpus* and post-conviction relief, dealt with a variety of alleged errors and have run the gamut of our State and federal judicial systems. The present appeal is based upon several arguments which can appropriately be considered under three points:

(1) John's denial of having made a confession, implicating defendant, which was admitted into evidence at their joint trial, deprived him of his right to confront witnesses against him; the jury was prejudicially permitted to consider such inculpating statements and, accordingly, his trial was fundamentally unfair and violative of due process.

(2) In the denial of defendant's most recent application for post-conviction relief, the trial court erred in predicating its decision on the basis that the grounds upon which defendant relied should have been asserted in a direct review of the judgment of conviction, that they were not raised in prior post-trial proceedings, and that defendant's petition failed to recite that a denial of relief pursuant to the bar imposed by *R. R.* 3:10A–4 (now *R.* 3:22–4) would contravene fundamental justice or the New Jersey Constitution.

(3) In view of the substantial and meritorious constitutional issues he sought to raise in that proceeding, he should have been granted the right to counsel.

I

Defendant frames the principal issue of this appeal thusly:

\* \* \* In a joint trial for murder, where an extrajudicial statement attributed to the co-defendant (John Wade) is admitted in evidence but the declarant (John Wade) denies making the statment which the State has introduced and which implicates the particular defendant involved herein (Nathaniel Wade) *as well as* the declarant, is the defendant (Nathaniel Wade) denied his right to confrontation guaranteed by the Sixth Amendment?

His position, naturally, is that the answer to this query should be affirmative.

He argues that John's witness-stand denial of having made a confession which incriminated himself and defendant, deprived him of his Sixth Amendment right to confront witnesses in violation of the rule of *Bruton v. United States,* 391 *U. S.* 123, 88 *S. Ct.* 1620, 20 *L. Ed.* 2d 476 (1968). In that case, decided after defendant's trial but retroactively applicable to it, *Roberts v. Russell,* 392 *U. S.* 293, 88 *S. Ct.* 1921, 20 *L. Ed.* 2d 1100, reh. den. 393 *U. S.* 899, 89 *S. Ct.* 73, 21 *L. Ed.* 2d 191 (1968), the court repudiated the rule of *Delli Paoli v. United States,* 352 *U. S.* 232, 77 *S. Ct.* 294, 1 *L. Ed.* 2d 278 (1957), and held that

a defendant's Sixth Amendment right might be transgressed if a co-defendant's confession, implicating the defendant, were admitted at their joint trial notwithstanding the trial judge's cautionary instruction to the jury that the confession shall not be used against him.

More specifically, defendant contends that although his opportunity to cross-examine John was technically available to him, it was so effectively frustrated by John's denial, that his Sixth Amendment right could not possibly have been satisfied. In support of this argument he relies heavily upon *Bruton's* reference to *Douglas v. Alabama,* 380 *U. S.* 415, 85 *S. Ct.* 1074, 13 *L. Ed.* 2d 934 (1965), 391 *U. S.* at 127–128, 88 S. Ct. 1620, and upon *Townsend v. Henderson,* 405 *F.* 2d 324 (6 Cir. 1968), and *Cook v. Sigler,* 299 *F. Supp.* 1338 (D. Neb. 1969), contending that the latter cases make it clear that the right to confrontation is not a mere procedural technicality and that it can only be satisfied by an adequate opportunity to effectively cross-examine witnesses against him. Accord, *O'Neil v. Nelson,* 422 *F.* 2d 319 (9 Cir), *cert.* granted 400 *U. S.* 901, 91 *S. Ct.* 136, 27 *L. Ed.* 2d 137 (1970); *West v. Henderson,* 409 *F.* 2d 95 (6 Cir. 1969); and *United States v. Zentgraf,* 310 *F. Supp.* 268 (N. D. Cal. 1970). *Contra, Wade, supra; Baker v. Wainwright,* 422 *F.* 2d 145 (5 Cir.), *cert.* den. 399 *U. S.* 927, 90 *S. Ct.* 2243, 26 *L. Ed.* 2d 794 (1970); see *United States v. Insana,* 423 *F.* 2d 1165 (2 Cir.), *cert.* den. 400 *U. S.* 841, 91 *S. Ct.* 83, 27 *L. Ed.* 2d 76 (1970); *cf. United States ex rel. Hundley v. Pinto,* 413 *F.* 2d 727 (3 Cir. 1969), *cert.* den. 398 *U. S.* 940, 90 *S. Ct.* 1849, 26 *L. Ed.* 2d 274 (1970). See also *Santoro v. United States,* 402 *F.* 2d 920 (9 Cir. 1968), *cert.* den. 400 *U. S.* 849, 91 *S. Ct.* 58, 27 *L. Ed.* 2d 86 (1970), and *State v. Gardner,* 54 *N. J.* 37 (1969).

We agree that the right to confront witnesses is not a mere procedural technicality; however, we disagree wtih defendant's contention and incline toward the contrary rationale, especially that expounded in *Wade, supra,* as the better reasoned approach. Inasmuch as we find that de-

cision to be controlling, the following quotation from its holding, which decided the precise issue here under consideration, regarding John, is relevant.

At the joint trial of the Wades, Nathaniel's confession was offered by the State and over his objection was admitted in evidence against him. The jury was instructed, however, under the doctrine of Delli Paoli v. United States, 352 U. S. 232, 77 S. Ct. 294, 1 L. Ed. 2d 278 (1957), that the confession was not to be considered against John. Nathaniel later took the stand in his own defense and while admitting that the confession bore his signature, claimed that it was obtained when his mind was clouded by the effects of the Demerol, his physical injuries and the suffering imposed by the travels of the day, and that when he signed the paper he thought it was merely a consent to be photographed. In cross-examination of Nathaniel, the prosecution read his confession item-by-item, followed in each instance by his denial.* John did not cross-examine his brother.

Since Nathaniel already had denied the truthfulness as well as the voluntariness of the confession, which had made John the chief culprit, John asserts that so far as he was concerned he had in fact no opportunity for effective cross-examination of Nathaniel. There existed, he asserts, only the appearance of an opportunity for confrontation of Nathaniel because at the most John could expect no more on Nathaniel's cross-examination than a reiteration of the testimony he had given on direct examination and on cross-examination by the state that his confession implicating himself and John was not truthful or voluntary.

In *Bruton*, where *Delli Paoli* was overruled, it was held that in a joint trial the introduction against a co-defendant of his confession which also implicates the defendant deprives the defendant of his Sixth Amendment right of confrontation, where the co-defendant has not taken the witness stand, because the defendant could not cross-examine him, and a cautionary instruction to the jury to consider the confession only as against the co-defendant was held to be ineffective.* The evil at which *Bruton* struck was the likelihood that the co-defendant's confession might percolate into the minds of the jurors despite a cautionary instruction. The Supreme Court did not intend in *Bruton* to invalidate all joint trials in which a co-defendant's confession is admitted against him. Where confrontation is available it matters not that the defendant finds it unnecessary to cross-examine his co-defendant because he has already said on direct examination or on cross-examination by the prosecution all that the defendant could possibly have expected to achieve by cross-examining him. It might, of course, be said that in every joint trial, even where there is confrontation and the co-

*Asterisks signify omitted footnotes.

defendant can be cross-examined by the defendant regarding the co-defendant's confession which implicates the defendant, there is nevertheless inevitable prejudice to the defendant that cannot adequately be met by cross-examination. But we cannot view *Bruton* as expressing *sub silentio* a doctrine which would declare all joint trials invalid whenever a co-defendant has given a confession which implicates the other defendant, even though both defendants, as here took the stand and there is full opportunity to cross-examine the co-defendant who made the confession. We do not feel at liberty to extend its holding to what may appear to be the logical next step of declaring all such joint trials inevitably unconstitutional for lack of due process.*

John's choice not to cross-examine Nathaniel regarding the confession does not destroy the reality that Nathaniel was available for that purpose. The right of confrontation is satisfied where there is the opportunity for cross-examination and does not require that the opportunity be exercised.* If John's cross-examination of Nathaniel could not have been of any use to John, this is only because Nathaniel had already given John the benefit on his direct examination and cross-examination by the state of the disavowal of his confession which John normally might have hoped to achieve by cross-examination. That it came voluntarily from Nathaniel instead of being wrung from him on cross-examination shows only that cross-examination was unnecessary and not that it was unavailable.*

We hold, therefore, that John suffered no deprivation of his constitutional right of confrontation which made the admission of Nathaniel's confession constitutionally invalid as to John.* [415 *F.* 2d at 571–573]

However, even if Wade were not entirely controlling, we find that, in light of the record, any *Bruton* error was "harmless beyond a reasonable doubt." *Harrington v. California,* 395 *U. S.* 250, 89 *S. Ct.* 1726, 23 *L. Ed.* 2d 284 (1969); *Chapman v. California,* 386 *U. S.* 18, 87 *S. Ct.* 824, 17 *L. Ed.* 2d 705 reh. den. 386 *U. S.* 987, 87 *S. Ct.* 1283, 18 *L. Ed.* 2d 241 (1967); *State v. Macon,* 57 *N. J.* 325, 338 (1971); *cf. Dutton v. Evans,* 400 *U. S.* 74, 91 *S. Ct.* 210, 27 *L. Ed.* 2d 213 (1970).

## II

■ Defendant argues that *Bruton* was decided long after his conviction and the affirmance thereof, and therefore he

---

*Asterisks signify omitted footnotes.

could not possibly have raised the *Bruton* issue either on direct appeal or in his previous post-trial proceedings. In effect, defendant challenges the trial court's reasons for denying post-conviction relief, but it should be noted that "appeals are taken from judgments or orders and not from reasons assigned." *Janiec v. McCorkle,* 52 *N. J. Super.* 1, 21 (App. Div. 1958), *cert.* den. 362 *U. S.* 944, 80 *S. Ct.* 811, 4 *L. Ed.* 2d 772 (1960), and 365 *U. S.* 804, 81 *S. Ct.* 470, 5 *L. Ed.* 2d 461 (1961). Inasmuch as the relief sought was properly denied, for the legal reasons enunciated in *Wade, supra,* we need not belabor the procedural reasons expressed by the trial court in buttressing a finally correct determination.

## III

■ Defendant properly urges that in view of the meritorious nature of the grounds he asserted in his petition for post-conviction relief, counsel should have been assigned, notwithstanding the fact that he had on prior occasions sought post-conviction relief, see *State v. Marshall,* 91 *N. J. Super.* 346, 349 (App. Div. 1966); *R. R.* 3:10A–6(b); *R.* 3:22–6(b). In any event, defendant suffered no prejudice. He is here represented by assigned counsel who has raised before this court all the issues which could have been heard at the post-conviction relief hearing had he been represented there by counsel.

The instant order denying post-conviction relief is affirmed.

Every book must have its final chapter. So, too, in litigation there must be a terminal point. Defendant had a fair trial and the record reveals his guilt beyond any shadow of a doubt. During the past ten years he has had more than a fair indulgence, under our judicial system, in appeals and post-trial reviews; somewhere along the line there must be a time to call a halt.