GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff

v.

ANGEL RUIZ, CARLOS CORCINO, RAFAEL SAN KITTS and ANGEL VENTURA, Defendants

Crim. No. 63-1972

District Court of the Virgin Islands

Div. of St. Croix

February 6, 1973

JOEL D. SACKS, U.S. ATTORNEY by JULIO BRADY, ASSISTANT U.S. ATTORNEY, Christiansted, V.I., *for plaintiff*

DAVID V. O'BRIEN, ESQ., Christiansted, St. Croix, V.I., *for defendant Ruiz*

ROBERT A. ELLISON, ESQ., Christiansted, St. Croix, V.I., *for defendant Corcino*

JOHN P. BURKE, ESQ., Christiansted, St. Croix, V.I., *for defendant San Kitts*

RUSSELL B. JOHNSON, ESQ., Christiansted, St. Croix, V.I., *for defendant Ventura*

YOUNG, *Judge*

## MEMORANDUM OPINION AND ORDER

This is a prosecution for first degree murder and robbery. Of the four persons charged in the Information, three have been apprehended and are now in custody. These defendants have filed a number of preliminary motions, which may be categorized as of three types: (1) Two defendants have sought to suppress their alleged confessions or other statements; (2) each defendant has requested a severance of his trial from that of the other two; and finally, (3) two defendants have sought a reduction in bail which is presently set at $100,000 without provision for posting ten percent. For the reasons set forth below, I will reserve decision on Corcino's motion for a severance and will deny all of the other motions, but will order that other steps be taken to prevent defendants from being prejudiced by the joint nature of the trial.

## I

■ Defendant Angel Ruiz has moved to suppress any alleged confession made by him on the ground that it was not preceded by all of the warnings required in Miranda v. Arizona, 384 U.S. 436 (1966). For two reasons, however, I do not believe that such warnings are required on the facts of the present case. First, Miranda applies in terms only to custodial interrogations. Id. at 444, 478. A custodial interrogation is defined by two characteristics: it is initiated by the law enforcement officers and is conducted under circumstances in which the suspect is in custody "or otherwise deprived of his freedom of action in any significant way." Id. at 444. The limitation of Miranda to custodial interrogations follows from the rationale of the opinion itself. It is in these circumstances that a suspect may be so far overawed by the powers of the State that his confession is not truly "voluntary". Miranda has since been extended to a variety of circumstances, but their common characteristic appears to be that law enforcement officials have taken the initiative and plied the suspect with questions which he did not invite and could not well avoid. See, e.g., Orozco v. Texas, 394 U.S. 324 (1969) (interrogation in suspect's own home, but where he was not free to leave); Mathis v. United States, 391 U.S. 1 (1968) (suspect already in jail on other charges). The circumstances of the alleged Ruiz confession are quite different. Although Ruiz was in custody at the time, he initiated the discussions and himself first approached the police with what is claimed to be a confession. The resulting dialogue thus cannot be characterized as a "custodial interrogation". Moreover, it is not the sort of transaction which concerned the Court in Miranda. By electing to approach the police, Ruiz exercised greater control over the situation and was less likely to be coerced into making an involuntary statement.

■ Ruiz's "confession" may also be distinguished from Miranda in a second way. Ruiz's lawyer was present at the time he spoke with the police and made his statements. While Miranda does not explicitly dispense with the warning requirements when a lawyer is present, this conclusion seems implicit in the rationale of that decision. The warnings are intended to inform a defendant of his threshold rights, and this is something which his counsel can do with at least equal effectiveness. Indeed, the underlying premise of Miranda appears to be that the presence of counsel during a confession is the preferred and sufficient answer to questions of voluntariness. For this reason several of the warnings are calculated to inform the suspect of his right to counsel. I therefore think that the presence of Ruiz's lawyer rendered it unnecessary to warn him that any statements that he made could and would be used against him.[1] When Ruiz's attorney called the United States Attorney to arrange a time and place for the statement to be volunteered, it was implicit that the statement could be used against him. We may fairly assume that the attorney explained this risk to his client at the time. Ruiz's case therefore falls within the exception which the Supreme Court wrote into Miranda:

> However, *unless we are shown other procedures which are at least as effective* in apprising accused persons of their right of silence and in assuring a continuous opportunity to exercise it, the following safeguards must be observed.

384 U.S. at 467 (emphasis added). If Ruiz elected to confess in these circumstances, perhaps on the mistaken assumption that he would secure a reduced charge thereby, I can only conclude that this was a risk which he accepted intelligently and knowingly.

---

[1] This is the only one of the Miranda warnings which was not given.

■ Defendant San Kitts has attempted to have his alleged confession suppressed on a different theory. His counsel urges that San Kitts' intelligence and rationality are so marginal and his grasp of the English language so meager that his alleged confession cannot be construed as having been knowingly and voluntarily made. There is indeed authority for the proposition that a mentally disturbed suspect may not have effectively waived his right to remain silent. However, I believe that the cases cited turn on more flagrant and clear-cut fact situations than are present here. In Blackburn v. Alabama, 361 U.S. 199 (1960) the defendant was almost certainly insane at the time he confessed. The suspect in Spano v. New York, 360 U.S. 315, 322 (1959) had a "history of emotional instability." And in Fikes v. Alabama, 352 U.S. 191 (1957) the suspect was extremely unintelligent if not actually insane, was kept isolated from other prisoners, and was interrogated over a period of many days at a jail far from his home. No such aggravated circumstances are shown on the present record. The defense attorney has admittedly supplied an affidavit which tends to show that San Kitts may have been mentally incompetent. I was sufficiently impressed with this to order a psychiatric examination at government expense. However, that order was subsequently withdrawn when it appeared that a qualified psychiatrist could not be obtained. With matters in this posture I believe that I must rely on a presumption of rationality; and I am unwilling to deprive the fact-finders of evidence with the probative value that an alleged confession has without some stronger indication that it was not voluntarily made.

As to the argument that San Kitts was prejudicially handicapped by not being furnished an interpreter to translate from English to Spanish and Spanish to English, I comment that a careful reading of the transcript clearly

indicates that San Kitts understood everything that was discussed between his counsel and the U.S. Attorney and that he understood all questions asked of him.

## II

As mentioned above, each defendant has moved for an order severing his trial from those of his co-defendants. In each instance their reason for so moving is the real probability that the confession of one or more of the co-defendants will be introduced into evidence against the confessors. This may strongly tend to incriminate other persons named in the confession, and if the confessor elects not to take the stand, his version of events cannot be effectively challenged through cross-examination. As a practical matter juries cannot be expected to follow limiting instructions which would have them consider the evidence only as against the confessor, and disregard it as hearsay as against his co-defendants. Since the right to confrontation would thus be diluted, the practice of admitting the confession with limiting instructions has been disapproved. See Bruton v. United States, 391 U.S. 123, 127 (1968), quoting Douglas v. Alabama, 380 U.S. 415, 420, noted in The Supreme Court—1967 Term, 82 Harv. L. Rev. 63, 231 (1968).

█ At this stage of the proceedings, of course, the danger of prejudice arising from this quarter is only hypothetical. During a joint trial a confessor may elect to take the stand, in which case he would become properly available for cross-examination. Problems under the confrontation clause would therefore be avoided. Wade v. Yeager, 415 F.2d 570 (3rd Cir. 1969); see Virgin Islands v. Rivera, 442 F.2d 407 (3rd Cir. 1971). I might therefore simply deny the motions for severance, but do so without prejudice to their renewal at trial if it develops that one or more of the declarants will not testify. For

two reasons, however, this course seems less than satisfactory. First, if the contingency materializes of a confessor declining to take the stand it will require declaring a mistrial after the Government's case-in-chief has been presented. Details of the confessions will have become public knowledge by that time, and so could prejudice the subsequent and separate trials. Secondly, the admission of inculpatory statements by co-defendants, where the declarants are available for cross-examination, may be a practice with a limited life expectancy. This procedure does appear permissible under current law, see Nelson v. O'Neil, 402 U.S. 622 (1971). Nonetheless, its eventual demise may be foreshadowed by Jackson v. Denno, 378 U.S. 368 (1964).[2] Jackson held that due process was violated when a jury had before it a confession which was inadmissible because it was involuntarily given. The Court believed that a jury could not be sufficiently relied upon to follow instructions that such evidence should be disregarded in determining the defendant's guilt. The admission of inculpating statements by a co-defendant seems to present similar issues. Here also the jury would be asked to disregard incriminating evidence, with the only distinction being the reason why the jury is told to disregard it. In the one case the evidence may be involuntary, and in the other it may be hearsay; but as to the jury's ability to follow a limiting instruction, this seems a distinction without a difference. The admission of such confessions has therefore come under substantial attack by both courts, see Nelson v. O'Neil, supra, at 632 (Brennan, J., dissenting); cf. Bruton v. United States, 391 U.S. 123, 130–31 (1968) and commentators, cf. 1 Wright, Federal Practice & Procedure § 224 (1969).

---

[2] Moreover, if the practice is disapproved at some future date the reversal will probably be made retroactive. See Roberts v. Russell, 392 U.S. 293 (1968) (Bruton is to be applied retroactively).

Although these difficulties could be simply cured by granting a severance, there are countervailing policy considerations which would favor the use of joint trials. A single proceeding will save time and judicial resources. These considerations underlie Rule 8 of the Federal Rules of Criminal Procedure, which permits joinder in the interests of economy and efficiency where these objectives can be achieved without substantial prejudice to the defendants' right to a fair trial. See Bruton v. United States, 391 U.S. 123 (1968); United States v. Adams, 434 F.2d 756 (2nd Cir. 1970); Parker v. United States, 404 F.2d 1193 (9th Cir. 1968). I agree with these goals and approve of them, so that wherever permissible I will favor the use of a joint trial.

Our task is therefore to formulate a compromise which will permit joint trials in a number of instances while also avoiding prejudice to the defendants. Preferably, the procedure adopted should avoid not only the currently recognized sources of prejudice, but also those which may be recognized in the near future. In this task the trial court has been given considerable latitude by Rule 14 of the Federal Rules of Criminal Procedure. That permits the judge to grant a severance "or provide whatever other relief justice requires."

I believe that the preferable solution will require editing any statements before they are admitted, so that they relate only to the activity of the confessor and do not mention his co-defendants. Since the statements would then not be inculpatory as to the co-defendants, they should be admissible even if the confessor does not take the stand and become subject to cross-examination. Similarly, since they do not inculpate others, there should be no problem as to the jury's ability to disregard the statements in their application to the remaining defendants. Such editing may take two forms. Inculpatory passages in

the confession may be physically rewritten in more general terms, and the edited document itself offered into evidence; or an examining officer may testify as to the substance of the confession as it relates to the confessor, with his testimony not to touch upon matters inculpating the co-defendants. This latter method, naturally, will be the only one available in the case of an oral confession. There are advantages to each course. Oral testimony can be more flexibly phrased, so that there may be fewer remaining references to other defendants, or fewer obvious editorial changes from which a jury might imply that the names of additional defendants were originally present. In addition, editing the written paper will always present the risk of altering its substance as to the confessor and thus destroying its admissibility for even that purpose. On the other hand, however, editing the written document will avoid the risk of slips of the tongue. Moreover, it will not deprive the jury of the somewhat greater persuasive value of a signed confession.

█ Of the two courses I will favor receiving testimony as to the contents of a confession, but without admission of the writing itself. This practice has been approved by the Third Circuit. United States v. Rickey, 457 F.2d 1027, 1030 (3rd Cir. 1972); United States v. Lipowitz, 407 F.2d 597, 602 (3rd Cir. 1969). Conversely, the use of edited writings was found impermissible by the Second Circuit in United States v. Bozza, 365 F.2d 206 (2nd Cir. 1966). Bozza may, however, be distinguishable in that the editing there was limited to replacing the names of the co-defendants with blanks which the jury could easily fill in for itself. A more thorough editing might create a different situation. Since this is the case, and since so far as the Court has been advised the Third Circuit has not ruled on this issue, I will feel free to entertain motions that the written document be admitted if circumstances

call for that course with special persuasiveness. Approval of such a motion would appear most suitable in cases where the writing can be edited with relative simplicity, and where the edited document—even after deletions—will remain coherent and literate. In these circumstances it will not be manifest to the jury that alterations have been made, and so there will be less risk of their reading in implicit references to the co-defendants.

While the foregoing considerations will generally govern decisions in this Court, there is one remaining practical difficulty in their application to the facts of the present case. The theory behind editing statements, as a remedy, is to render them no longer inculpatory of the other defendants. The law relating to inculpatory "confessions" would then no longer be relevant to the case. In this trial, however, I am not certain that the statements can be sufficiently edited to remove tacit references to the defendant Corcino. I will therefore withhold decision on his motion for severance, and decide it at the time of trial when the character of the evidence introduced has become clearer.

## III

Finally, the defendants Corcino and San Kitts have moved for a reduction of their bail. This is presently set at $100,000 each, without provision for posting ten percent. The defendants are unable to raise this sum and therefore remain incarcerated.

Federal policy generally favors the release of defendants pending trial. See Fed. R. Crim. Proc. 46(a)(1), (c). Nonetheless, it must be borne in mind that the ultimate touchstone of bail decisions is maintenance of reasonable certainty that the defendant will remain available for trial. See Cohen v. United States, 82 S.Ct. 526 (1962) (opinion of Circuit Justice Douglas); Ward v. United States, 76 S.Ct. 1063 (1956) (opinion of Circuit Justice

Frankfurter). See also the extensive annotations in 3 Wright, Federal Practice & Procedure § 761 (1969); 18 U.S.C.A. § 3146 nn. 3, 4 (1969 Supp. 1972).

■ The Bail Reform Act of 1966 enumerated specific factors which judicial officers should consider when setting conditions of pretrial release. These are intended to balance the defendant's interest in release against the community's interest that he reappear when his case is tried.[3] Some of these considerations will relate equally to both defendants. The nature and circumstances of the offense charged are relevant to a bail decision, since with more serious crimes—and greater potential punishment—there will be a stronger inducement to flight. The offenses charged here are first degree murder and robbery, of which the murder count alone could result in life imprisonment. This factor becomes more persuasive to a bail decision when considered in conjunction with the apparent strength of the Government's case. For while a person might well return to face a low risk of even a substantial sentence, he will become more reluctant to do so as the probabilities of conviction mount. At this preliminary stage of the proceedings, it does appear that the prosecution's case will be relatively substantial.[4] As I discussed above, there exist alleged confessions taken from two of the three defendants. One of these was taken from the movant San Kitts, and may well have a substantial persuasive value to a jury. Although the movant Cor-

---

[3] 18 U.S.C. § 3146(b), which provides as follows:
 In determining which conditions of release will reasonably assure appearance, the judicial officer shall, on the basis of available information, take into account the nature and circumstances of the offense charged, the weight of the evidence against the accused, the accused's family ties, employment, financial resources, character and mental condition, the length of his residence in the community, his record of convictions, and his record of appearance at court proceedings or of flight to avoid prosecution or failure to appear at court proceedings.

[4] I need not point out, of course, that in making this determination I am not familiar with the defense that will be offered; and I intimate no view whatever as to the ultimate merits of the case.

cino has apparently made no statement, and those of his co-defendants will not be admissible against him, it appears quite possible that his co-defendants may reaffirm their statements at trial or by taking the stand otherwise cause damaging evidence to reach the jury. It thus appears that an equally strong case may be offered against Corcino.

The foregoing general considerations would tend to suggest to me that bail should not be reduced. I have also considered the information presented by each movant as to his own personal character and background, as is set forth in 18 U.S.C. § 3146(b). I do not find in these considerations, however, sufficient indications of stability to overcome an otherwise strong inducement to flight. The motions for reduction of bail will therefore be denied.

ORDER

For the reasons set forth above, it is hereby ORDERED as follows:

1. All motions for reduction of bail are DENIED.

2. All motions for suppression of alleged confessions or other statements are DENIED.

3. A decision on defendant Corcino's motion for severance will not be made at this time but will be reserved for consideration during the course of the trial.

4. Defendants Ruiz's and San Kitt's motions for severance are DENIED;

PROVIDED, HOWEVER, that written statements inculpating other defendants will not be received into evidence; nor will testimony as to oral statements tending to the same result;

BUT PROVIDED FURTHER, that any party may request an in camera hearing at which he may show that edited written statements should be admitted in this case.