**UNITED STATES of America, Appellee,**

v.

**Joseph FALCONE and Joseph Curreri, Appellants.**

**No. 277, Docket 76–1237.**

United States Court of Appeals, Second Circuit.

Argued Oct. 5, 1976.

Decided Nov. 1, 1976.

George W. F. Cook, U. S. Atty., D. Vt., Rutland, Vt. (Jerome F. O'Neill, Asst. U. S. Atty., Rutland, Vt., on the brief), for appellee.

Irving Anolik, New York City (James W. Murdoch, Burlington, Vt., on the brief), for appellants.

Before LUMBARD, FEINBERG and MESKILL, Circuit Judges.

LUMBARD, Circuit Judge:

Joseph Falcone and Joseph Curreri appeal from convictions entered on April 19, 1975 after an eight day trial before Judge Coffrin in the District of Vermont. Appellants were each found guilty, on five counts, of having violated 18 U.S.C. §§ 152 and 2:[1] the fraudulent concealment of the property of a bankrupt from the trustee and creditors of Alburg Creamery, Inc. of Alburg, Vermont (count I); the making of a false oath in regard to a bankruptcy proceeding (count II); the fraudulent transfer and concealment of property in contemplation of a bankruptcy proceeding and with the intent to defeat the bankruptcy laws (count III); the fraudulent making of a false entry in a document relating to the property of a bankrupt (count IV); and, conspiring to violate the bankruptcy laws by the doing of the foregoing acts (count V).[2] The principal claim of appellants is that there was insufficient evidence to submit the case to the jury and that the trial court erred in denying their motion for judgment of acquittal. We find no merit in any of the claims of error and, accordingly, affirm.

During the period of the alleged offenses, appellant Falcone was an officer of both Falcone Dairy Products, Inc., of Brooklyn, New York (hereinafter "the Dairy") and its wholly owned subsidiary Alburg Creamery (hereinafter "Alburg"); Curreri was the office manager of the Dairy during this time period. Alberg's principal product was mozzarella cheese, most of which was ordinarily sold to the Dairy which marketed the cheese to its customers.

The essence of the government's case was that by placing a false credit of $210,711.05 on the Dairy's books against amounts owed to Alburg, the appellants transferred and concealed Alburg's accounts receivable in contemplation of Alburg's bankruptcy. According to the government, this offense was compounded by the filing with the trustee in bankruptcy of a false Statement of Affairs which failed to disclose that the credit had been taken, and which, as a result of the credit, listed the Dairy as a creditor rather than a debtor of Alburg.

---

1. The relevant portions of 18 U.S.C. § 152 provide as follows:

> Whoever knowingly and fraudulently conceals from the receiver, custodian, trustee, marshal or other officer of the court charged with the control or custody of property, or from creditors in any bankruptcy proceeding, any property belonging to the estate of a bankrupt; or
>
> Whoever knowingly and fraudulently makes a false oath or account in or in relation to any bankruptcy proceeding; or
>
> \* \* \* \* \* \*
>
> Whoever, either individually or as an agent or officer of any person or corporation, in contemplation of a bankruptcy proceeding by or against him or any other person or corporation, or with intent to defeat the bankruptcy law, knowingly and fraudulently transfers or conceals any of his property or the property of such other person or corporation; or

> Whoever, after the filing of a bankruptcy proceeding or in contemplation thereof, knowingly and fraudulently conceals, destroys, mutilates, falsifies, or makes a false entry in any document affecting or relating to the property or affairs of a bankrupt;
>
> \* \* \* \* \* \*
>
> Shall be fined not more than $5,000 or imprisoned not more than five years, or both.

2. Both Falcone and Curreri were charged with committing the acts alleged in counts I and IV. Counts II and III charged that Falcone committed the relevant acts, aided and abetted by Curreri. See 18 U.S.C. § 2. Falcone was sentenced to 3 years imprisonment and a $2,000. fine on each count, the sentences to run concurrently. Curreri received 3 years imprisonment and a $500. fine on each count, the sentences to run concurrently.

The main factual issue at trial revolved around appellants' claim that the credit, which had been entered on the books on January 31, 1974, was legitimately taken for defective, "fishy"-smelling cheese delivered by Alburg in 1971. The government produced substantial evidence in support of its theory that the credit was fraudulently taken and that the "fishy" cheese story was a fabrication to cover-up the transfer and concealment of Alburg's assets. The government established that on January 22, 1974 Alburg was adjudicated a bankrupt and on that date the Dairy owed Alburg somewhere between $172,000. and $284,000. for shipments of cheese; the exact amount owed was uncertain as most of Alburg's books were lost in a fire that destroyed the Alburg plant on July 13, 1973. On January 31, 1974, pursuant to the instructions of the appellants, a credit against Alburg in the amount of $210,711.05 was placed in the Dairy's books with the notation: "Accounts Payable—Alburg. . . . To adjust for credits to customers due to defective cheese from July 1971 thru Dec. 1971."[3] The government further established that as vice-president of Alburg, Falcone executed a Statement of Affairs and filed it with the trustee in bankruptcy on February 14, 1974. The statement did not show the Dairy to be a debtor of Alburg; rather, the statement listed the Dairy as an unsecured creditor of Alburg in the amount of $48,709.31.[4] The statement failed to indicate in any way that the Dairy had taken the $210,000. credit just a few days before. The trustee testified that although the Dairy's books had been produced (at his request), the estate was administered on the basis of the debits and credits shown in the Statement of Affairs. Thus, the trustee did not attempt to collect and did not even know of the debt owed by the Dairy.

In support of the government's contention that little or no defective cheese was delivered by Alburg in 1971 Leo Laramee, a cheesemaker and the manager of Alburg up until his resignation in 1973, testified that although Alburg had some problems with "fishy"-smelling cheese up until 1969, this problem was eliminated in 1969.[5] Laramee was unaware of any substantial or unusual problems with Alburg's cheese in 1971; he received no complaints from the Dairy, and, in fact, the Falcones had complimented him on the quality of Alburg's cheese. Warren Laramee (Leo Laramee's son, employed as a cheesemaker at Alburg), substantially corroborated his father's testimony.

According to the government's calculations at trial, in order to establish a $210,000. credit, the Dairy must have received more than 400,000 pounds of rancid cheese—about 40 per cent of all cheese delivered by Alburg to the Dairy in the last six months of 1971. The government established that Lucille Farm Products, Inc., which bought one-half of Alburg's cheese output in 1971 (about one million dollars worth), received only $1,900. in credits against Alburg for that entire year.

As indicated above, the defense at trial was that the $210,000. credit was legitimately taken for defective cheese that Alburg delivered to the Dairy in the last six months of 1971. Both appellants testified that the Dairy had received large amounts of rancid cheese from Alburg during the period in question and that because of this the Dairy had been forced to give numerous credits to its customers. While the Dairy's books showed that during the last six months of 1971 a number of credits had been given to customers, the entries neither specified the reason the credits were given, nor indicated in any way that the Dairy had

---

3. Government's Exhibit 72, Government's Appendix at 9.

4. The trustee testified at trial that although the Dairy at first indicated that it would make a claim against the estate, it later withdrew. Thus, it appears that the Dairy did not participate in the distribution of Alburg's assets.

5. Laramee testified that up until 1969 Alburg used village water in its cheese production and that this water sometimes contained weeds and little fish or polliwogs—which would account for the "fishy" odor of defective cheese. This problem was cleared up in 1969, when Alburg dug its own well.

received bad cheese from Alburg. Appellants also testified that they had not taken the credits against Alburg in 1971 because they were afraid that to do so would have thrown Alburg into bankruptcy. The appellants also called Joseph Campagna, a Dairy customer, who testified that he had received a good deal of foul cheese from the Dairy for which he received credit. However, Campagna's testimony was indefinite as to the amount of cheese and credits involved and he stated that he did not know who had produced the cheese; this latter admission is significant because the government established that Alburg was not the Dairy's only source of cheese.

Appellants also called their attorney, Joseph Wool, and the Dairy's accountant who testified that they had advised the appellants that it would be permissible to take a credit in 1974 for deliveries of foul cheese made in 1971. In addition, appellants produced an accounting expert who testified that, in his opinion, it was not an improper accounting method to cancel the 1971 purchases in 1974. Of course, if the jury believed that there was no factual basis for the credit, the advice given the appellants was wholly immaterial.[6]

■ Viewing the evidence in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Marrapese*, 486 F.2d 918, 921 (2d Cir. 1973), cert. denied, 415 U.S. 994, 94 S.Ct. 1597, 39 L.Ed.2d 891 (1974), it is clear that a reasonable juror might fairly find the appellants guilty. *United States v. Rivera*, 513 F.2d 519, 528–30 (2d Cir.), cert. denied, 423 U.S. 948, 96 S.Ct. 367, 46 L.Ed.2d 284 (1975); *United States v. Freeman*, 498 F.2d 569, 571 (2d Cir. 1974); *United States v. Taylor*, 464 F.2d 240, 243–45 (2d Cir. 1972). There was

ample evidence that the $210,000. credit was entered with the intent to transfer and conceal Alburg's accounts receivable and that the "fishy"-cheese story was a fabrication. That the Dairy waited over two years, until its subsidiary had gone bankrupt, before taking the credit is in itself suspicious. Moreover, the Dairy's books nowhere indicate (except, of course in the January 31, 1974 entry taking the credit) that any bad cheese had been received from Alburg during the relevant period. To justify the $210,000. credit, 40 per cent of the cheese sent by Alburg to the Dairy in the last six months of 1971 would have had to have been bad. In contrast, Lucille Farm Products, Inc., which in 1971 bought one-half of Alburg's output, received only $1,900. in credits for the entire year. Finally, Alburg's manager, Leo Laramee, testified that he received no complaints from the Dairy in 1971 concerning "fishy" cheese and was unaware of any unusual problems with Alburg's cheese.

■ The remaining claims of error merit little discussion. Appellants allege that FBI agents used tactics that were "fundamentally unfair" in obtaining statements admitted over objection at trial. Agent Axton indicated to Falcone's attorney, Joseph Wool, that he was conducting a criminal investigation into entries in the Dairy's books and wished to interview Falcone. Wool stated that he did not want Falcone interviewed; nonetheless, at a meeting among Axton, Wool and Falcone, Falcone volunteered answers to questions that Axton directed to Wool. Axton testified to these statements at trial. The court found the statements to be voluntarily given. We reject as frivolous appellants' claim that it was fundamentally unfair for Axton to testify to Falcone's statements without having first informed Falcone and his attorney

---

**6.** Appellants' claim that there could have been no criminal intent because of their reliance upon expert advice (i. e., their lawyer and accountant) amounts to no more than another attempt to challenge the sufficiency of the evidence. Appellants do not question the correctness of the court's jury instruction that appellants' reliance upon expert advice should be considered a circumstance disproving fraudu-

lent intent only if the jury found that the advice was given after full disclosure of all relevant and material facts. See *Williamson v. United States*, 207 U.S. 425, 453, 28 S.Ct. 163, 52 L.Ed. 278 (1908); *Bisno v. United States*, 299 F.2d 711, 719 (9th Cir. 1961), cert. denied, 370 U.S. 952, 82 S.Ct. 1602, 8 L.Ed.2d 818 (1962); *United States v. McCormick*, 67 F.2d 867, 870 (2d Cir. 1933).

that Falcone's statements might later be repeated at trial.

■ Appellants also claim that bankruptcy documents, which were required by law to be filed, were admitted at trial in violation of their Fifth Amendment privilege against self-incrimination.[7] Appellants' reliance on *Marchetti v. United States*, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968) and *Grosso v. United States*, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968) is entirely misplaced. These cases involved reporting requirements aimed at a highly select group, inherently suspect of criminal activities; further, the inquiries were directed in an area permeated with criminal statutes. See *California v. Byers*, 402 U.S. 424, 427–31, 91 S.Ct. 1535, 29 L.Ed.2d 9 (1971) (plurality opinion). In contrast, requirements of the type at issue here have an important regulatory aim and are of general applicability, as the Supreme Court held in *Johnson v. United States*, 228 U.S. 457, 458–59, 33 S.Ct. 572, 572, 57 L.Ed. 919 (1913):

> It is true that the transfer of books may have been against the defendant's will, but it is compelled by the law as a necessary incident to the distribution of his property, not in order to obtain criminal evidence against him. Of course, a man cannot protect his property from being used to pay his debts by attaching to it a disclosure of crime. If the documentary confession comes to a third hand *alio intuitu*, as this did, the use of it in court does not compel the defendant to be a witness against himself.

Although *Johnson* predated *Marchetti* and *Grosso*, its holding here is in line with more recent Supreme Court cases. See *Califor-*

*nia v. Byers, supra*, 402 U.S. at 427–31, 91 S.Ct. 1535; see also *Bisno v. United States*, 299 F.2d 711, 718–19 (9th Cir. 1961), cert. denied, 370 U.S. 952, 82 S.Ct. 1602, 8 L.Ed.2d 818 (1962).[8]

■ Lastly, with respect to the appellants' claims regarding the insufficiency of the indictment, it is enough to say that the superseding indictment upon which appellants were tried set forth the elements of the offense charged and provided appellants with ample detail to assure against double jeopardy and to appraise them of what they would have to be prepared to meet. See *United States v. Tramunti*, 513 F.2d 1087, 1113 (2d Cir.), cert. denied, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975); *United States v. Salazar*, 485 F.2d 1272, 1277 (2d Cir. 1973), cert. denied, 415 U.S. 985, 94 S.Ct. 1579, 39 L.Ed.2d 882 (1974).

Convictions affirmed.

---

**7.** Appellants do not specify what documents they find objectionable but apparently they were the Statement of Affairs and the involuntary petition in bankruptcy. Appellants also object to the admission of a memorandum of the bankruptcy judge referring to a proceeding in which Falcone testified. The memorandum was offered only to show that Falcone appeared at the proceeding and it did not contain his testimony. See Record, vol. 1, at 9. Consequently 11 U.S.C. § 25(a)(10) has no application. In any event, appellants fail to explain,

and we fail to discern, what prejudice they suffered from the memorandum's admission.

**8.** We reject as against common sense and precedent appellants' unsupported suggestion that 11 U.S.C. § 25(a)(10) should be interpreted to require exclusion of the Statement of Affairs, the involuntary petition in bankruptcy and the statements made to F.B.I. agents. See *Ensign v. Pennsylvania*, 227 U.S. 592, 598–99, 33 S.Ct. 321, 57 L.Ed. 658 (1913); *In re U. S. Hoffman Can Corp.*, 373 F.2d 622, 625 (3rd Cir. 1967).