STATE

v.

Auston L. FORBES.

State

v.

Nicholas D. Lockhart.

No. 2005–77–C.A.

Supreme Court of Rhode Island.

June 21, 2006.

Aaron L. Weisman, Esq., Providence, for Plaintiff.

Judith Crowell, Esq., Providence for Forbes.

Denita M. Trembly, Esq., Lockhart.

Present: WILLIAMS, C.J., and GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Chief Justice WILLIAMS, for the Court.

The state has initiated this interlocutory appeal challenging the ruling of a motion justice of the Superior Court suppressing the alleged confessions of the defendants, Auston L. Forbes (Forbes) and Nicholas D. Lockhart (Lockhart) (collectively defendants). This case came before the Supreme Court for oral argument on May 15, 2006, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the record and the memoranda filed by the parties, we are of the opinion that this appeal may be decided at this time, without further briefing or argument. For the reasons set forth herein, we reverse the ruling of the motion justice.

## I

### Facts and Travel

In the waning hours of April 15, 2003, a long-term investigation undertaken by the Newport Police Department culminated in the defendants' arrests for allegedly conspiring to rob a grocery store in that city in violation of G.L.1956 § 11–1–6;[1] some time later, a single criminal information formally charged both defendants with this offense.

Before the start of their criminal trial, defendants filed separate motions to suppress statements they made to police immediately following their arrests. In arguing these motions, defendants alleged that their statements were given involuntarily and without either defendant having been apprised of his constitutional rights.

In November 2004, at the pretrial suppression hearing on defendants' motions,

---

1. A review of the criminal complaint filed against defendant Lockhart confirms that he was charged additionally with criminal solici-tation in violation of G.L.1956 § 11–1–9. That charge was not included in the criminal information.

Lieutenant Russell Carlone (Carlone)[2] testified for the state as to the circumstances surrounding defendants' arrests and subsequent questioning. According to Carlone, immediately after being taken into custody, in the early morning hours of April 16, 2003, defendants were brought to the Newport Police Station, where he questioned each defendant. One by one, beginning with defendant Lockhart at approximately 1 a.m., Carlone ushered defendants into a ten-foot-by-ten-foot room furnished only with a table and a couple of chairs, and informed each defendant of his *Miranda*[3] rights. No person other than Carlone and the particular defendant being questioned was present during either interview. Carlone said that he was not armed, and that he made neither threats nor promises to either defendant.

Carlone testified that prior to questioning, each defendant was presented with a "rights" form. Carlone stated that he—along with each defendant individually—reviewed the forms, that each defendant marked a box on his form indicating that he understood his *Miranda* rights, and that both defendants signed their respective forms. Carlone also signed each form as the "officer advising suspect of his rights," dated the documents and indicated the time each document was signed. On cross-examination, Carlone admitted he erred by failing to note the crimes for which each defendant had been arrested on either form in the space provided. He insisted, however, that he orally informed both defendants about the same prior to questioning. Both "rights" forms were admitted as full exhibits at the suppression hearing.

According to Carlone, each interview was recorded by means of audiotape; however, the state did not present these tape recordings at the suppression hearing. Instead, the state offered two transcriptions as evidence of defendants' tape-recorded statements. Carlone testified that, assuming the transcription of the tape recordings followed standard protocol, each tape recording was given to a secretary at the Newport Police Station to be transcribed. Upon being shown the transcriptions, Carlone confirmed that they were, in fact, transcriptions of defendants' statements and that they fairly and accurately represented the conversations Carlone had with both defendants in the early morning of April 16, 2003. The motion justice, however, did not allow either transcription as a full exhibit until the defense had an opportunity to cross-examine Carlone.

On cross-examination, Carlone admitted that he had not reviewed either transcription to determine whether they were, in fact, verbatim transcriptions of defendants' tape-recorded statements. There was no testimony as to whether Carlone had listened to the tape recordings of either interview before the suppression hearing. Carlone also confirmed that neither transcription had been shown to its corresponding defendant, and that neither defendant had signed his own transcribed statement. Carlone was the state's only witness at the suppression hearing, and the state rested at the conclusion of his testimony.

After brief argument, the motion justice issued his ruling. He began by framing the issue as follows: "The issue before the Court is the admissibility of what has been marked as State's Exhibit [4], which is the so-called 'confession,' if you would, of Mr. Lockhart and * * * State's Exhibit [2],

**2.** At the time of defendants' arrests and questioning, Lieutenant Russell Carlone was a sergeant in the Newport Police Department.

**3.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

which is supposedly the 'confession' of Mr. Forbes." The motion justice concluded that the transcriptions were not the "statements" of either defendant, noting additionally their questionable authenticity. Having determined that the transcriptions were not evidence of any statements defendants had made, the motion justice noted that "[t]here was no testimony by Carlone as to what [defendants] said to him at the police station. And in fact, my recollection of the testimony is that Carlone could not remember what he said to them, and obviously, there was no testimony whatsoever about any statements * * * made by either [defendant] to Carlone at that time." Finally, after pointing out that the state did not offer the actual tape recordings as evidence of the defendants' statements, the motion justice concluded as follows:

"So for that reason, not really reaching the issue as to whether or not the state has met its heavy burden * * * of proving by clear and convincing evidence that the confession was voluntary and intelligent, it was not illegally obtained, the fact of the matter is that neither of these [transcriptions] is the 'confession' of either of these individuals. So, therefore, the objection to the admissibility of [the transcriptions] is sustained."

When the defense asked him to clarify whether his ruling precluded the state from being able "to introduce the tapes as evidence in the trial," the motion justice responded that "[t]here was no testimony put before me that there was any tape. There was no evidence put before me that [the state] would introduce any statements. Obviously, the state has not met its burden in that regard."

In January 2005, the state filed a motion seeking clarification of the motion justice's ruling; specifically, the state sought to ascertain whether the motion justice's ruling was limited to the transcriptions or whether the state was also precluded from admitting into evidence at defendants' trial the tape-recorded statements themselves. The motion justice made clear that his ruling extended to the tape-recorded statements of defendants:

"So my ruling applied not only to the transcription but also to the statements themselves because the state failed in its burden, heavy burden of proof that the statements were admissible. As I said, the tapes themselves were not even offered into evidence, which really constitutes the statement of the defendants in this case, and as I said then and I will reiterate, the state failed in its burden of proof. The motion to suppress went to the statements themselves."

The state pursued this interlocutory appeal of the motion justice's ruling pursuant to G.L.1956 § 9–24–32.

## II

### Analysis

The state's only contention on appeal is that the motion justice committed reversible error in granting defendants' motions to suppress their custodial, tape-recorded statements to Carlone.[4] The state argues that Carlone's testimony, coupled with the signed "rights" forms, satisfied its burden of proving that defendants gave these statements voluntarily.

### A

#### Standard of Review

It is well settled that this Court will "accord deference to the trial court's factu-

---

4. In its brief the state does not challenge the motion justice's ruling that the transcripts were inadmissible as substantive evidence of the defendants' statements.

al findings concerning the historical events pertaining to the confession by using a 'clearly erroneous' standard of review." *State v. Ramsey*, 844 A.2d 715, 720 (R.I. 2004) (quoting *State v. Carter*, 744 A.2d 839, 845 (R.I.2000)); *see also State v. Grayhurst*, 852 A.2d 491, 513 (R.I.2004). "However, we review the voluntariness of a confession on a *de novo* basis because '[t]he voluntariness of a confession is a legal question.'" *In re Joseph B.*, 822 A.2d 172, 174 (R.I.2003) (quoting *State v. Kryla*, 742 A.2d 1178, 1183 (R.I.1999)).

## B

## Voluntariness

 A pretrial determination of voluntariness requires the following:

"[It] must be made on the basis of all facts and circumstances, including the behavior of the defendant and the behavior of the interrogators, and the ultimate test 'is whether the defendant's statements were the "product of his free and rational choice" * * * or the result of coercion that had overcome the defendant's will at the time he confessed.'" *State v. Torres*, 787 A.2d 1214, 1224–25 (R.I.2002) (quoting *State v. Briggs*, 756 A.2d 731, 738 (R.I.2000)).

We will not presume voluntariness "from the fact that the accused has actually made a confession or a statement." *State v. Perez*, 882 A.2d 574, 589 (R.I.2005). With respect to the voluntariness determination to be made by the motion justice, "the burden of proof that is imposed upon the state is that of 'clear and convincing evidence.'" *State v. Dennis*, 893 A.2d 250, 262 (R.I.2006) (quoting *State v. Lima*, 546 A.2d 770, 773 n. 3 (R.I.1988)).

 "The sole issue in * * * a [suppression] hearing is whether a confession was coerced." *Lego v. Twomey*, 404 U.S. 477, 485 n. 12, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). That is, considerations other than the voluntariness of a custodial statement—for example, the reliability of that statement—are inappropriate at a suppression hearing. In fact, a motion justice is "duty-bound to ignore implications of reliability in facts relevant to coercion and to shut from his [or her] mind any internal evidence of authenticity that a confession itself may bear." *Id.; accord Powell v. State*, 540 So.2d 13, 15 (Miss.1989). The suppression hearing is not intended to determine the evidentiary admissibility of a custodial statement, but rather to ensure, as a threshold matter, that the taking of the statement comported fully with the rights afforded a criminal defendant under article 1, section 13, of the Rhode Island Constitution and the Fifth and Fourteenth Amendments to the United States Constitution.[5] This determination is made based on the totality of the circumstances. *See Torres*, 787 A.2d at 1224–25. The fact that a motion justice must refrain from allowing either internal or external indicia of a statement's reliability to sway his or her determination of that statement's voluntariness lends substantial support to our conclusion herein, that a statement's evidentiary authenticity *vel non* cannot be a legitimate consideration in a pretrial determination of voluntariness. Instead, the determination of whether a criminal defendant's custodial statement is admissible under the rules of evidence at trial is only properly before the court when it is offered into evidence at trial. To hold otherwise essentially would require the state to offer into evidence at a suppression hear-

---

**5.** To be sure, "[p]rotections under article 1, section 13, of the Rhode Island Constitution have uniformly been interpreted as tantamount to those available under the Federal Constitution in matters relating to, for example, *Miranda* rights and waiver of those rights * * *." *State v. Bertram*, 591 A.2d 14, 21 (R.I.1991).

ing a criminal defendant's custodial statement. Especially in light of the United States Supreme Court's delineation of the scope of a suppression hearing in *Lego,* we decline to adopt such a bright-line standard.

■ After an independent review of the evidence presented at the suppression hearing, we are of the opinion that defendants' custodial statements were voluntarily made. First, Carlone testified that he was alone with each defendant during each interview, that he did not wear a weapon, and that he made neither promises nor threats to either defendant. This evidence was undisputed. In addition, defendants' acknowledgements of their understandings of each *Miranda* warning on the "rights" forms tend to corroborate Carlone's testimony that he went over the content of the forms with each defendant before questioning him. The forms themselves contain an acknowledgement that each defendant understood his rights, and display the signature of each defendant. Finally, Carlone's inability to recall whether Forbes orally acknowledged comprehension of his rights is not fatal to the state, especially since Forbes signed a document certifying exactly this.

■ Lockhart argues, however, that defendants could not have knowingly, intelligently, and voluntarily made those statements because they never were informed of the crimes for which they had been arrested. For support, Lockhart cites the noticeable blanks on his "rights" forms in the spaces provided for such information, as well as Carlone's testimony that defendants likely were not informed of the offenses causing their arrests at the time

they were taken into custody. Lockhart cites no authority for this proposition.

Lockhart's argument is easily dismissed. First, at the suppression hearing Carlone insisted—despite repeated attempts by defense counsel to spur an admission to the contrary—that he informed both defendants of the crimes for which they had been arrested. Yet, even if he had failed to so inform defendants, such an omission does not automatically require a finding of involuntariness, but is merely a single factor to be considered in light of all the evidence presented at the suppression hearing. In fact, the United States Supreme Court has held that "valid waiver does not require that an individual be informed of all information 'useful' in making his decision or all information that 'might * * * affec[t] his decision to confess.' * * * '[W]e have never read the Constitution to require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights.'" *Colorado v. Spring,* 479 U.S. 564, 576–77, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987) (quoting *Moran v. Burbine,* 475 U.S. 412, 422, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)). "[A] suspect's awareness of all the possible subjects of questioning in advance of interrogation is not relevant to determining whether the suspect voluntarily, knowingly, and intelligently waived his Fifth Amendment privilege." *Id.* at 577, 107 S.Ct. 851. Accordingly, it was unnecessary for Carlone to have divulged to defendants the various topics to be addressed at questioning. It is enough that Carlone thoroughly informed each defendant of his *Miranda* rights, as evidenced by the two "rights" forms.[6]

---

6. The defendants also allege that the state failed to furnish them with their tape-recorded statements pursuant to a pretrial discovery request. Apparently, defendants have yet to file a motion to compel these statements from the state. As such, there is no ruling of the Superior Court for us to review. *See* G.L. 1956 § 9–24–32. Therefore, this issue is not

We hold that the state proved by clear and convincing evidence that the defendants gave their statements to Carlone voluntarily.

## Conclusion

For the foregoing reasons, we reverse the decision of the Superior Court. The record shall be returned to the Superior Court for further proceedings not inconsistent with this opinion.

properly before the Court, and we will not address it.