DECISION
Defendant Alfred Bishop ("Bishop") has filed a motion to suppress statements which he made while in the custody of the Warwick Police Department on July 3, 2007. Essentially, Defendant Bishop claims that because he was not provided with the Miranda[1] warnings prior to the police interrogation, the statements he made to the police are inadmissible. More specifically, he argues that because he was never advised of his rights under Miranda, his statements were not voluntarily made in the constitutional sense. After carefully considering the evidence presented at hearing, oral arguments, and the written submissions of the parties, the motion is ripe for decision.
 Facts and Travel
Defendant Bishop has been charged with first degree murder and a number of other criminal offenses stemming from a home invasion at the residence of Ceasar[2] and Claire Medeiros during the early morning hours of June 28, 2008.
Officers of the Warwick Police Department responded to a 911 emergency call at the Medeiros home. Upon arrival, the officers found Gabriel Medeiros, Ceasar's brother, dead on the floor of the kitchen as a result of a gun shot wound. Ceasar also suffered a gun shot wound *Page 2 
after he had attempted to ward off an intruder in his home. Claire was also injured slightly. The Medeiroses were rushed to Rhode Island Hospital for emergency medical attention. After interviewing the Medeiroses in the emergency room, Detectives of the Warwick Police Department began an intensive investigation, led by Detective Sergeant Robert Bentson, to identify the suspect in the murder and other related offenses.
Within a few days of the incident, Defendant Alfred Bishop became a person of interest in the homicide investigation. Learning that the police were interested in talking with him, Bishop telephoned Sergeant Bentson and was told that Bentson wanted to meet with him. Bishop replied that because he had injuries to his head[3] from a work related accident, he was unable to meet with the Detective. By tracing a telephone call, the police determined that it was likely that Bishop was at the residence located at 109 Birch Street, Warwick. At about 5:00 a.m. on July 3, 2007, the police went to that location, observed Bishop through a window, and entered the house for the purpose of affecting his arrest on a parole violation warrant. Bishop was handcuffed and taken immediately to Warwick Police headquarters.
The police led Bishop to the Detective Division where he requested to call Attorney Paul DiMaio prior to being interviewed by the police. The police allowed the defendant to telephone DiMaio in private. That call was not unexpected by DiMaio, as Detective Bentson had previously advised him that a parole violation warrant had been issued for Bishop, and that the Warwick Police Department wished to talk to Bishop about an ongoing investigation.
At approximately 7:30 in the morning, Attorney DiMaio arrived at the Warwick Police headquarters and was allowed to speak with his client in private. The attorney-client meeting terminated after about 20 minutes when Attorney DiMaio left the room in which he Bishop had *Page 3 
met, indicating that their discussions had been concluded. At this point, Detective Bentson, together with Detectives Sassi and DeGregorio, entered the room. The police then began to interview Bishop in the presence of Attorney DiMaio. The interview, the contents of which the State proposes to offer as evidence at trial, was recorded on a VHS video recording system. The fruits of that recording have since been transferred to a digital computer disc.[4]
The parties agree that Attorney DiMaio was present through the entirety of the interview. At one point, Attorney DiMaio asked to speak with his client in private. Honoring the request, the Warwick Police left the interview room after shutting off the recorder. In this way, Bishop was able to again speak privately with his attorney. The interview then resumed until it was finally concluded at Attorney DiMaio's request. During some portions of the interview, Attorney DiMaio also asked questions of the defendant. At other times he spoke for the defendant in response to police inquiry.
It is undisputed that the police did not advise Bishop of the so-called Miranda warnings. This was because the police believedMiranda warnings were not required due to the fact that his attorney was present throughout the interview proceedings.
 Analysis
Bishop asserts that his statements made in response to police questioning while he was in custody at the Warwick Police Station are not admissible as evidence at his trial. Specifically, he contends that the failure of police to advise him of his Miranda[5] rights and secure his waiver of *Page 4 
those rights prior to interrogation render such statements inadmissible. Further, he claims that these omissions on the part of the police resulted in a violation of his Fifth Amendment right against self-incrimination.
"Both the United States and the Rhode Island Constitutions forbid the use of a defendant's involuntary confession." State v. Monteiro,924 A.2d 784, 790 (R.I. 2007) (citing State v. Humphrey, 715 A.2d 1265, 1274(R.I. 1998)). "[B]efore a confession can be used at trial, the state must establish, by clear and convincing evidence, that the defendant knowingly and intelligently waived his or her right against self-incrimination and that the statement was voluntary." Id. The most common way the police demonstrate that an accused is aware of hisFifth Amendment right against self-incrimination is proof thatMiranda warnings were given to the accused either orally, in writing, or both.[6]
In 1966, following a long line of cases which require law enforcement officers to honor a criminal suspect's rights under the Federal Constitution, the United States Supreme Court decided the landmark case of Miranda v. Arizona. As will be discussed below, the high court hasnever held that providing the Court-created warnings to a suspect in custody was absolute. Rather, the Court held:
 [T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. . . . As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that *Page 5 
any statements he does make may be used as evidence against him, and that he has the right to the presence of an attorney, either retained or appointed. Miranda, 384 U.S. at 444 (emphasis added).
The question squarely presented herein is whether the presence of retained counsel at the time of Bishop's interrogation satisfied the constitutional requirement of procedural safeguards of hisFifth Amendment guarantees.
A central guarantee is that no confession or statement shall be held admissible unless it is truly a product of free choice. A confession must be voluntary in the Constitutional sense. See State v. Forbes,900 A.2d 1114, 1118 (R. I. 2006). (" `The sole issue in * * * a [suppression ] hearing is whether a confession was coerced.'") (citing Lego v.Twomey, 404 U. S. 477, 485 n. 12 (1972)). A principal reason for the requirement of the Court-crafted warnings announced in Miranda was the Supreme Court's conclusion that confessions are commonly obtained while the suspect is held incommunicado in a police-dominated atmosphere.[7]
Of great concern to the Miranda Court was the sad fact that law enforcement personnel had historically used violence or improper psychological pressure to extract confessions from criminal suspects. The bulk of the interrogations are conducted while the suspect is isolated and in the secrecy of police stations. The interrogation techniques of the police, who historically took advantage of interview conditions, constituted a substantial basis for the Miranda decision. As observed by the Court, the "interrogation environment is created for no purpose other than to subjugate the individual to the will of his examiner." Miranda, 384 U.S. at 457. And, "given this background, we concern ourselves primarily with this interrogation atmosphere and the evils it can bring." Id. at 456. Thus, in Miranda a litany of warnings was formulated as "a protective device to dispel the compelling atmosphere of the interrogation." Id. at 465. However, the Court stated clearly and *Page 6 
without reservation, "[t]he presence of counsel, in all the cases before us today, would be the adequate protective device necessary to make the process of police interrogation conform to the dictates of the privilege. His presence would insure that statements made in the government-established atmosphere are not the product of compulsion."Id. at 466.
With this caveat and the purpose of the Miranda decision in mind, this Court now turns to the substantial case authority which has discussed the admissibility of such statements.[8] As will be discussed, every court which has ruled on the issue, with one exception, [9] has followed the holding[10] of Miranda.
Shortly after the Miranda decision was handed down, the Eighth Circuit addressed this issue in Frohmann v. United States. 380 F.2d 832 (1967). In Frohmann, the defendant was under investigation for failure to file tax returns. The defendant challenged the admission of statements he made during a conference at the Internal Revenue Service attended by defendant, his lawyer, and two agents because he was not advised of all of the rights prescribed in Miranda.[11] The Eighth Circuit recognized that the defendant was not in "custody" for the purposes ofMiranda, but noted that when the defendant's counsel is present at an interrogation, "[a]ny basis for a *Page 7 
claim of deprival of advice as to the right of counsel thus evaporates."Id. at 836. The Second Circuit echoed this sentiment in United States v.Falcone, 544 F.2d 607 (2d Cir. 1976). The defendant in Falcone claimed that FBI agents used "fundamentally unfair" tactics by obtaining statements from him in the presence of his attorney without informing the defendant or his attorney that the defendant's statements might be used at trial. Id. at 610-11. The Second Circuit dismissed the defendant's argument as "frivolous," implying that the presence of counsel protected him against the FBI's allegedly unfair tactics.Id. at 610.
Similarly, lower federal courts have held that the presence of defense counsel obviates the need for Miranda warnings. In United States v.Guariglia, [12] the defendant was involved in a scheme in which corporate executives of the corporation where defendant was an official bribed public officials to help the corporation win government contracts. The defendant was invited to the U.S. Attorney's Office under the government's pretext of seeking more information from him. After the defendant was confronted with perjury allegations, the defendant called his lawyer. Upon his lawyer's arrival, the defendant and his lawyer met privately for approximately one hour. Following this meeting, the defendant rebutted the charges with his lawyer present. The defendant later sought to suppress these statements because he had not been advised of his Miranda rights. The District Court held that nothing in the events surrounding the statements warranted their suppression. The court stated that "[a]s a matter of simple logic, if Miranda warnings are meant to protect a defendant until he can consult counsel, . . . they are not necessary when counsel is present." 757 F. Supp. at 264
(internal citations omitted); see also United States v. Thevis,469 F. Supp. 490, 507-8 (D.C. Conn. 1979), aff'd 614 F.2d 1293 (2d Cir. 1979),cert. denied 446 U.S. 908, 100 S. Ct. 1834 (1980) (statements made during custodial interrogation in the presence of two attorneys representing the defendant admissible based on Miranda decision); *Page 8 Virgin Islands v. Ruiz, 354 F.Supp. 245, 247 (D.C.V.I. 1973) (presence of defendant's counsel rendered it unnecessary to precede statements with all of the warnings required in Miranda).
Several state courts have more directly addressed the issue of whetherMiranda warnings are required when defense counsel is present. InState v. Vos, [13] the defendant surrendered to police at his attorney's office after he became a suspect in a murder. Prior to the interview, the defendant and his attorney conferred privately. The attorney told police that the defendant was waiving hisMiranda rights, and the defendant subsequently gave a statement to police in the presence of his attorney without being given anyMiranda warnings. The defendant challenged the trial court's denial of his motion to suppress his statement to police on the grounds that he was not provided Miranda warnings. In response, the Court of Appeals of Utah held that the presence of defendant's attorney during custodial interrogation substitutes for Miranda warnings as a means of protecting the accused's privilege against self-incrimination. Id. at 1263.
Another case factually similar to the present matter is Smith v.State.[14] There the Court of Criminal Appeals of Alabama held that it was not necessary to establish that the defendant had been givenMiranda warnings before his statements could be used against him. Specifically, the Smith Court found that the defendant clearly understood and exercised his rights to remain silent and to consult with an attorney. This was because he had invoked his right to remain silent and requested to speak with an attorney, the name of whom he provided to law enforcement officials. The defendant was also permitted to confer privately with that attorney, after which he reinitiated contact with the police in the presence of that attorney. Accordingly, the court concluded that "`other fully effective means' that constituted `a fully effective equivalent' of the Miranda warnings were present." 832 So.2d at 98. *Page 9 
Several state supreme courts have similarly found thatMiranda warnings are not necessary when defense counsel is present. InPeople v. Mounts, [15] the defendant's lawyer advised investigators that the defendant had information about a murder. The sheriff's department then interviewed the defendant, with his attorney present. The defendant was not advised of his Miranda rights prior to any questioning because the investigator believed that the defendant was a witness at the time. The Colorado Supreme Court held that the absence ofMiranda warnings did not require suppression of the defendant's statements during the interview because Miranda warnings were rendered "superfluous" when the defendant and his chosen counsel were given adequate time for consultation prior to the police interrogation, and counsel was actually present at that interview. 784 P. 2d at 796;see also State v. Bethel, 110 OhioSt.3d 416, 426, 854 N.E.2d 150, 169
(Ohio 2006) ("it is generally accepted that the presence of counsel during interrogation `obviates the need for warnings.'"); Baxter v.State, 254 Ga. 538, 543, 331 S.E.2d 561, 568 (Ga. 1985) overruled onother grounds, (presence of defendant's counsel provided "adequate protective device" during state initiated interview of defendant without advisement of Miranda warnings); Collins v. State, 420 A.2d 170 (Del. 1980) (Miranda warnings are unnecessary and superfluous where counsel for defendant is present and defendant has been given an adequate opportunity to consult with counsel prior to the giving of any statement).
The case at bar is factually similar in several important ways to the cases discussed above. First, Bishop invoked his right to remain silent upon being taken into custody, just as the defendant in Smith invoked his right to remain silent. Also factually similar to the defendant inSmith where the defendant provided the name of an attorney to police, Bishop requested to speak to his attorney whose name he provided to the officers. Bishop was also permitted to consult *Page 10 
with his attorney privately, similar to the protections afforded to the defendants in Guariglia, Vos, Smith, and Mounts. Additionally, Bishop spoke with the Warwick Detectives only while in the presence of Attorney DiMaio, just as the defendants in Guariglia, Vos, Smith, andMounts only spoke with law enforcement officers in the presence of counsel.
This Court notes that the Supreme Court of West Virginia is the only court to rule — contrary to the holding in Miranda — that the presence of counsel is not an adequate protective device.[16] With all due respect for the Supreme Court of West Virginia, this judicial officer finds that its decision in State v. DeWeese, [17] is wrongly decided. The DeWeese decision completely ignored all reported cases to the contrary. In doing so, the court stated that it "found no decision wherein a court has ruled that a defendant forfeits his/her right to be informed of the privilege against self-incrimination merely because he/she has exercised the right to have counsel present at an interrogation." 213 W. Va. 339, 348, 582 S.E.2d 786, 796. This Court's research, however, has revealed numerous cases published prior to the 2003 DeWeese decision where courts found that the presence of counsel obviates the need for informing a defendant of the privilege against self-incrimination. See United States v. Falcone, 544 F.2d 607 (2d Cir. 1976) cert. denied 430 U.S. 916, 97 S. Ct. 1329 (1977); United States v.Frohmann, 380 F.2d 832, 836 (8th Cir. 1967) cert. denied 389 U.S. 976,88 S. Ct. 478 (1967); United States v. Thevis, 469 F. Supp. 490, 507-8
(D.C. Conn. 1979), aff'd 614 F.2d 1293 (2d Cir. 1979), cert. denied446 U.S. 908, 100 S. Ct. 1834 (1980); Virgin Islands v. Ruiz,354 F.Supp. 245, 247 (D.C.V.I. 1973); Collins v. State, *Page 11 420 A.2d 170 (Del. 1980); People v. Mounts, 784 P.2d 792, 796 (1990);Smith v. State, 832 So.2d 92, 98 (Ala.Crim.App. 2001), cert.denied 832 So.2d 100 (Ala. 2002).
Additionally, the facts in DeWeese are easily distinguishable from the facts of the present case. In DeWeese, the defendant was not informed of his Miranda rights prior to taking a polygraph examination. Although the defendant's counsel was present in the room where defendant was administered the polygraph examination before the test began, counsel was not present in the room while the polygraph examination was actually administered to defendant. DeWeese, 213 W.Va. at 349, 582 S.E.2d at 796. The DeWeese Court held that "the police must inform the defendant of hisMiranda rights even though defense counsel is present in the room with the defendant when a polygraph examination is about to be given."Id. In the case at bar, Bishop was not subjected to a polygraph examination, but rather to an interview by Warwick Detectives. Bishop's counsel was present in the room during the entire interview, whereas inDeWeese the defendant's counsel was present in the building but not in the room with his client while he was questioned. Additionally, Bishop was permitted to meet privately with Attorney DiMaio both before and during the interview.
This Court finds that, as the State argues, Bishop had full knowledge and understanding of the rights proscribed by the Miranda warnings and that he knowingly and intelligently waived these rights. The Rhode Island Supreme Court has held that "before a confession can be used at trial, the state must establish, by clear and convincing evidence, that the defendant knowingly and intelligently waived his or her right against self-incrimination. . . ." Monteiro, 924 A.2d at 790. In determining whether an individual understands his constitutional rights, several factors may be considered. State v. Crowhurst, 470 A.2d 1138
(R.I. 1984). Our Supreme Court has noted that "[o]ne may find out aboutMiranda rights through attendance at a high school civics *Page 12 
class, by watching one of the many detective shows appearing on television, or by personal experience through previous contacts either with the police or with the courts." Id. at 1142. Similarly, the United States Supreme Court has remarked that it is implausible for a person under investigation to be unaware of his right to remain silent "[i]n the modern age of frequently dramatized `Miranda' warnings. . . ."Brogan v. United States, 522 U.S. 398, 405, 118 S. Ct. 805, 810 (1998).
This Court is satisfied that Bishop was clearly aware of his right to remain silent. He exercised that right when he was taken into custody. It is also apparent that Bishop was aware of his right to the presence of counsel because he exercised this right by immediately asking for Attorney Paul DiMaio, his long-time attorney.[18] Further, this Court finds that Bishop understood that any statements he made to police could be used against him at trial because Bishop has prior involvement with Rhode Island police and courts. See Crowhurst, 470 A.2d at 1142 (Rhode Island Supreme Court found previous involvement with New Jersey police and courts telling evidence that the defendant knowingly and intelligently waived constitutional rights).
Moreover, as the State argues, the statements made by Bishop were voluntary. In deciding whether a statement is voluntary, this Court must consider "the totality of the circumstances surrounding the challenged statement." State v. Ramsey, 844 A.2d 715, 720 (R.I. 2004) (quotingState v. Carter, 744 A.2d 839, 845 (R.I. 2000)). The Rhode Island Supreme Court has held that a determination of the voluntariness of a defendant's statements must be "made on the basis of all facts and circumstances, including the behavior of the defendant and the behavior of the interrogators, and the ultimate test `is whether the defendant's statements *Page 13 
were the "product of his free and rational choice" * * * or the result of coercion that had overcome the defendant's will at the time he confessed.'" State v. Forbes, 900 A.2d 1114, 1118 (R.I. 2006) (quotingState v. Torres, 787 A.2d 1214, 1224-25 (R.I. 2002)).
The manner of interrogation in this case reflects that Bishop's statements were made voluntarily. First, the police honored the defendant's invocation of his right to remain silent until his attorney was present. Upon Attorney DiMaio's arrival, Bishop was provided an unrestricted opportunity to meet privately with his attorney prior to any questioning. After Bishop met with Attorney DiMaio for approximately twenty minutes, DiMaio indicated to the detectives that his client was ready to be interviewed. The interview itself was recorded, thus lessening any possibility of police coercion.
Moreover, the interview was conversational in nature, exhibiting an easy give and take between the detectives and Bishop. Attorney DiMaio also intermittently answered questions on his client's behalf and reminded him that he did not have to say anything. Furthermore, the pace of the interview was dictated in part by Bishop. This is made clear by the fact that during the interview Bishop requested to confer with his attorney in private. Questioning was stopped in order to accommodate Bishop's request. Finally, the interview was terminated at Attorney DiMaio's direction.
Based on the totality of the circumstances, there does not appear to have been any coercion on the part of the Warwick Police. SeeRamsey, 844 A.2d at 720. Nor is there even a suggestion that Bishop's will was overcome at any point during the interview. See Forbes,900 A.2d at 1224-25. Viewing all of the facts and circumstances together, this Court finds that Bishop's statements were made as a result of his own free choice. In a word, they were *Page 14 
voluntary. This is all that is required under the Fifth Amendment.See State v. Forbes, 900 A.2d at 1118.
 Conclusion
This Court finds there is clear and convincing evidence that Bishop's right against self-incrimination was adequately protected despite the fact that he was not advised of his Miranda rights prior to questioning. Accordingly, Defendant Bishop's Motion to Suppress Statements of the Defendant is denied.
[1] Miranda v. Arizona, 384 U.S. 436 (1966).
[2] Mr. Medeiros spells his first name "Ceasar." He is married to Claire.
[3] Ceasar Medieros repeatedly hit the intruder over the head with a golf club. Medieros has positively identified the defendant as the intruder.
[4] Hr'g ex. 6.
[5] Miranda v. Arizona, 384 U.S. 436 (1966) was actually a review of four separate cases. The decision established the now familiar series of warnings which act as a safeguard against involuntary statements or confessions. The case created no new constitutional right, but rather announced a means — a "procedural safeguard" — by which a suspect'sFifth Amendment right could be honored.
[6] As made clear in State v. Bertram, 591 A.2d 14, 21 (R.I. 1991), "Protections under article 1, section 13, [the self-incrimination clause,] of the Rhode Island Constitution have uniformly been interpreted as tantamount to those available under the Federal Constitution in matters relating to, for example, Miranda rights and waiver of those rights, the right against self-incrimination in civil trials, and a prosecutor's or judge's inability to comment adversely on a criminal defendant's failure to testify." See also State v.Forbes, 900 A.2d 1114, 1118 (R.I. 2006).
[7] In Miranda, the Court noted that the four cases consolidated for decision "all share salient features — incommunicado interrogation of individuals in a police dominated atmosphere, resulting in self-incriminating statements without full warnings of constitutional rights." 384 U.S. at 446.
[8] The Rhode Island Supreme Court has not ruled on the issue of whether or not the presence of a suspect's retained attorney during police interrogation obviates the need for Miranda warnings.
[9] State v. DeWeese, 582 S.E.2d 786, 213 W.Va. 339 (W.Va. 2003). The Hawai'i Supreme Court case of State v. Joseph, 109 Hawai'i 482,128 P.3d 795 (Haw. 2006), has been brought to this Court's attention as an additional case holding that the presence of counsel does not obviate the need for Miranda warnings. However, Joseph relied heavily on the provisions of its state constitution in holding that presence of counsel was not germane to the personal waiver of the privilege against self-incrimination under the Hawai'i Constitution. The Rhode Island Supreme Court has held that the privilege against self-incrimination under the Rhode Island Constitution is tantamount with the protections afforded under the Fifth Amendment of the United States Constitution, and has declined to afford any greater protections for the privilege against self-incrimination under the Rhode Island Constitution. Seesupra, footnote 7.
[10] Students of the law commonly oversimplify the holding ofMiranda. They conclude that Miranda requires police to provide a litany of warnings to a detained suspect, have the suspect acknowledge his understanding of the warnings, and waive invoking those protections before questioning may proceed. The holding of the case is not nearly so simple. As the Court stated, "Our holding . . . briefly stated is this: the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U. S. at 444. The word "warnings" is not used by the Court. Warnings, per se, are simply not required.
[11] The defendant was advised that he had a right not to answer any question to which the defendant replied he "did not intend to use that privilege." Frohmann, 380 F.2d at 835.
[12] 757 F.Supp. 259 (S.D.N.Y. 1991).
[13] 164 P.3d 1258 (Utah Ct.App. 2007).
[14] 832 So.2d 92 (Ala.Crim.App. 2001), cert. denied, 832 So.2d 100
(Ala. 2002).
[15] 784 P 2d. 792 (Colo. 1990).
[16] The Hawai'i Supreme Court has also held that an individual must be advised of Miranda warnings prior to interrogation despite the fact that defense counsel is present; however, the Hawai'i decision is based on the privilege against self-incrimination provision in the Hawai'i State Constitution. See supra footnote 10.
[17] 213 W.Va. 339, 582 S.E.2d 786 (W.Va. 2003). The West Virginia high court may have been swayed by the failure of law enforcement officers to present the defendant to a judicial officer without delay, a statutory requirement. The officers candidly admitted that they failed to follow that legislative mandate because they "wanted to obtain a statement from him." Id. at 792.
[18] Paul J. DiMaio, Esq. is listed as one of Bishop's attorneys in the opinion in State v. Bishop, 438 A.2d 255 (R.I. 1982). That case affirmed Bishop's conviction for the 1973 murder of James Dunn.